# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

* * *

| | |
|---|---|
| STEVEN M. ROWE, | Case No. 2:18-cv-00568-RFB-CWH |
| Plaintiff, | ORDER |
| v. | |
| NAPHCARE, INC., *et al.*, | |
| Defendants. | |

### I. INTRODUCTION

Before the Court is a Motion to Dismiss filed by Defendants Naphcare Inc., Trinidad Drozeski, Kristine Pagaduan, Ann Balogh, Hone Ye Huang, Harry Duran, Mylissa Peck, Valerie Gibson, Eileen Murillo, Daniel Navarro, Ray Montenegro, Olga Kubla, and Kelly Woodring. ECF No. 12. Plaintiff Steven Rowe opposed the motion, and Defendants replied. ECF Nos. 22, 23.

### II. FACTUAL BACKGROUND

Plaintiff alleges the following in his complaint:

Defendant Naphcare is contracted with the Clark County Detention Center ("CCDC"), which is a division of the Las Vegas Metropolitan Police Department. Defendant Naphcare employs the other Defendants.

Plaintiff was detained and booked into CCDC on April 15, 2016. At the time of booking, Plaintiff informed the booking officers that he suffered from Hailey-Hailey, a genetic disorder rendering Plaintiff susceptible to a substantial risk of infection if exposed to unsanitary conditions. At the time of booking, Plaintiff had only one small lesion under his armpit that was caused by his skin disorder. He informed the booking officers of his sole lesion and opined that his skin disorder

was currently under control, given that he was then suffering from only one small lesion. Defendant Drozeski subsequently wrote in his screening order regarding Plaintiff: "no injuries or infections noted." Defendant Drozeski failed to note Plaintiff's skin disorder and current lesion. The booking officers ordered Plaintiff to change into a CCDC shirt. Plaintiff unwillingly complied. Within hours, Plaintiff's lesion dramatically increased in size and severity.

Defendant Pagaduan examined Plaintiff later that night. She noted that Plaintiff informed her of his Hailey-Hailey diagnosis and that he treats his skin disorder by continuously cleaning his rashes with hibiclens, applying Neosporin ointment and triamcinolone cream, and using corn powder. Defendant Pagaduan failed to note Plaintiff's growing lesion. She also failed to provide Plaintiff with medications to treat the disorder and failed to remove Plaintiff to the infirmary. During the examination, Defendant Pagaduan obtained a HIPAA release from Plaintiff to obtain his medical records from Dr. Jeffrey Evenson—Plaintiff's treating physician. But she never requested the medical records from Dr. Evenson. Thus, Defendants never attained the records.

A few hours later, Defendant Balogh reviewed Plaintiff's chart and cleared him for standard booking and housing procedures. She did not opt to send Plaintiff to a sick cell and did not note that Plaintiff had special medical needs despite acknowledging Plaintiff's disorder. She entered only the following note: "s/c Clotrimazole and Betamethazone cream." She did not administer any treatment with the noted creams.

The following night, despite the rapidly growing lesion under his arm, Defendant Balogh noted that Plaintiff was in no apparent distress while he was lying in his bunk.

On April 17, 2016, Defendant Huang examined Plaintiff. His notes state that Plaintiff had no lesions or rashes. Thus, Defendant Huang cleared Plaintiff for the general population classification despite knowing that Plaintiff's disorder would be exacerbated by unsanitary conditions and that the general population was a known unsanitary environment. Plaintiff was then transferred to general population without any medical treatment. Within twenty-four hours, Plaintiff developed a noticeable skin breakdown with discharge.

In the evening of April 18, 2016, Defendant Duran examined Plaintiff, noting "multiple areas of plaque and skin breakdown, right axilla is particularly noted for discharge." Defendant

Duran did not provide medications to Plaintiff or remove Plaintiff from the general population to a medical unit despite acknowledging Plaintiff's worsening condition. Defendant Duran was the first physician to examine Plaintiff during Plaintiff's confinement with CCDC.

Plaintiff filed a kite the following day, seeking medical attention for his skin disorder and for his substantial risk of contracting a staph infection.

The same day and unrelated to the filed kite, Defendant Peck examined Plaintiff. She noted that Plaintiff had an abnormal diastolic blood pressure. She did not note Plaintiff's worsening skin condition or provide treatment for the abnormal diastolic blood pressure. Defendant Peck then reexamined Plaintiff several hours later. Despite noting for the second time that Plaintiff had an abnormal blood pressure, she did not provide treatment and did not mention his worsening skin condition.

On April 21, 2016—two days later—Defendant Naphcare, through its staff, reviewed Plaintiff's medical kite. The staff answered the kite by stating that Plaintiff had been seen by a provider and was prescribed multiple medications. Defendant Naphcare did not provide medication to Plaintiff when answering the kite.

The same day, Defendant Gibson noted that Plaintiff had an abnormally high pulse and rapidly deteriorating health. But she did not remove Plaintiff to a sick cell or provide any treatment. She also did not note his worsening skin condition.

On April 22, 2016, Plaintiff was to be transferred to Unit 4L due to his deteriorating skin condition according to a staff order form. The order form also requested paper for Plaintiff to use "to fan his armpits[.]" It did not request medications or soap. Ultimately, an unnamed Defendant overruled the transfer order.

Defendant Murillo examined Plaintiff on April 23, 2016 in the early morning. She noted that his skin was "visibly scattered with reddened irritated patches of rash [and a] rash under right armpit appears moist." While Murillo prescribed medications, she prescribed the wrong medications and did not provide any medications or treatment at the time of the examination. She also did not remove Plaintiff from general population.

///

1    Plaintiff submitted a second kite the same day regarding the infection under his arms. But
2    no treatment was provided. He therefore filed a third kite later in the day, stating that the "rash is
3    worse, full blown rotten smell in groin and arm pits." Again, Defendants failed to provide
4    treatment.

5    In the afternoon of April 24, 2016, Defendant Navarro examined Plaintiff and noted
6    "chronic intermittent skin rash secondary to familial pemphigus." He also noted the medications
7    that were previously prescribed but failed to correct the prescriptions for medications to treat
8    Hailey-Hailey. He also did not provide medications at the time of the examination or remove
9    Plaintiff from the general population.

10   That night, Defendant Montenegro examined Plaintiff. He stated that Plaintiff had lesions
11   "on inguinal and axillary areas" and "other lesions on the chest and body" but "[n]o drainage." He
12   did not provide any treatment or remove Plaintiff from the general population.

13   Plaintiff submitted a fourth medical kite on April 25, 2016. He stated that he had "the
14   worst rotting flesh smell." He also explained that he had requested an emergency visit with the
15   physician, who responded that he would examine Plaintiff in the morning—nearly twenty-four
16   hours later. Defendants never responded. Plaintiff therefore submitted another medical kite to ask
17   for an examination by a senior medical staff physician. Again, Defendants never responded. For
18   the third time that day, Plaintiff filed a medical kite, reporting that he was given antibiotics. He
19   was then ordered to be transferred to Unit 4L for medical observation.

20   In the early evening of April 25, 2016, Defendant Duran examined Plaintiff. He stated that
21   the "right axillary lesion [was] improving, and the lesions on the arms and trunk [were] resolving"
22   but the "groin lesions are macerated and irritated." Despite his observations, Defendant Duran did
23   not provide any treatment to Plaintiff.

24   The following morning, Plaintiff submitted a medical kite to confirm his morning
25   medications included fungal cream and fungal tablets. He submitted a second kite that day,
26   explaining the provided medications were not appropriate for his specific disorder.

27   Later the same day, Defendant Kubla examined Plaintiff but did not provide medical
28   treatment. Defendant Duran then reexamined Plaintiff in the evening. He noted that he would

1 order a "systemic antifungal." Prior to this point, Defendants had not yet administered an antifungal even though eleven days had passed since Plaintiff's initial booking.

On April 27, 2016, Defendant Woodring noted that she administered an antifungal powder; this was false.

The same day, Plaintiff executed a second HIPAA release for records with UMC, Southern Highlands, and Dr. Ken Landow. Defendant Naphcare, through staff, faxed a request for medical records to UMC. UMC responded that no recent medical records existed for Plaintiff. Defendant Naphcare never faxed a request to Southern Highlands or Dr. Landow. It also failed to fax a request to Dr. Evenson—Plaintiff's treating physician—despite previously securing a HIPAA release from Plaintiff for the records with Dr. Evenson.

In the evening, Defendant Duran examined Plaintiff again, noting that Plaintiff was started on a systemic antifungal. He also noted that Plaintiff had requested antibacterial soap and powder. Despite requesting the soap and powder since his initial booking, the items were never provided.

On April 28, 2016, Defendant Duran told Plaintiff that he needed to provide HIPAA releases for prior treatments and to cooperate with CCDC treatment procedures. Plaintiff had already executed several HIPAA releases in cooperation with CCDC, but Defendant Naphcare staff never faxed corresponding requests. After the conversation, Defendant Duran cleared Plaintiff to return to general population despite being aware that the unsanitary conditions previously exacerbated Plaintiff's skin disorder.

On May 3, 2016, Plaintiff was released from CCDC after eighteen days. Plaintiff received the necessary treatment for his disorder after his release, beginning on May 4, 2016, when Dr. Evenson provided Plaintiff with a steroid treatment.

On May 8, 2016, Sunrise Hospital Emergency Room diagnosed Plaintiff with a fungal infection caused by a type of fungus called "tinea."

On May 17, 2016, Summerlin Hospital Emergency Department diagnosed Plaintiff with "scattered macular papular erythematous lesions throughout the trunk, extremities and cheeks."

/ / /

/ / /

On June 1, 2016 and June 3, 2016, Urgent Care Maricopa diagnosed Plaintiff with "several dark healed scabbed lesions and dark scarring to limbs, abdomen and back" and as a "MRSA carrier with current infection."

On June 18, 2016, Banner Health ("BMG Health Center") in Maricopa diagnosed Plaintiff with MRSA. MRSA is a bacterium type of staphylococcus infection that is typically antibiotic resistant and is commonly found in jails, spreading by skin-to-skin contact. While in the custody of CCDC, Plaintiff stayed mostly in general population, which exposed all the inmates to risk of MRSA infection.

On July 13, 2016, Plaintiff was treated at BMG Health Center again. Dr. Richardson noted that "coalescence of these macules into large areas that engulf the axillae and groin" and that Plaintiff had "a 4 cm red rough lesion LLQ area at the belt line."

On October 12, 2016, Plaintiff was treated at BMG Health Center for a third time. Skin cultures were collected and analyzed for infectious diseases. The tests return a finding that the cultures were staphylococcus aureus, non-MRSA variety.

Since October 12, 2016, six months after he was booked into CCDC, Plaintiff continued a regimen of steroidal treatments for his various skin disruptions and macerations that arose due to his Hailey-Hailey disorder when Plaintiff was repeatedly exposed to unsanitary conditions without appropriate medical treatment or attention in CCDC.

### III. PROCEDURAL BACKGROUND

Plaintiff sued Defendants on March 29, 2018, alleging five claims against all Defendants. ECF No. 1. He first alleges a claim for deliberate indifference to a serious medical need based on four theories: Defendants exposing him to unsanitary conditions and surfaces in general population despite knowing of his skin disorder and his worsening condition; Defendants repeatedly denying all of his request to be removed from general population; Defendants denying his repeated requests for treatment and items such as antibacterial soap, clean clothing, and antifungal powder; and Defendants failing to obtain Plaintiff's medical records from Dr. Evenson despite obtaining a HIPAA release from Plaintiff. Id. While Plaintiff's first claim is the focus of this Order, Plaintiff

also alleges claims for negligence; negligence per se; negligent hiring, training, selection, and supervision; and gross negligence. Defendants now move to dismiss the complaint. ECF No. 22.

### IV. LEGAL STANDARD

In order to state a claim upon which relief can be granted, a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In ruling on a motion to dismiss for failure to state a claim, "[a]ll well-pleaded allegations of material fact in the complaint are accepted as true and are construed in the light most favorable to the non-moving party." Faulkner v. ADT Security Servs., Inc., 706 F.3d 1017, 1019 (9th Cir. 2013). To survive a motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," meaning that the court can reasonably infer "that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation and internal quotation marks omitted).

### V. DISCUSSION

Defendants move to dismiss Plaintiff's first claim, arguing that Plaintiff disguised a medical malpractice claim as one for deliberate indifference to a serious medical need. Thus, Defendants insist the claim should be dismissed for failure to include an affidavit from a medical professional as required by Nevada Revised Statute ("NRS") 41A.071. Alternatively, Defendants move to dismiss the claim in relation to Defendant Naphcare for failing to allege Monell liability. Defendants lastly argue that the claim is time barred under NRS 41A.097(2). The Court considers each argument in turn.

#### a. Deliberate Indifference to a Serious Medical Need

To begin, Defendant argues that Plaintiff's first claim is one for professional negligence or malpractice rather than one for deliberate indifference to a serious medical need and should therefore be dismissed for the failure to attach an affidavit as required by NRS 41A.071.

The landscape for claims for deliberate indifference to a serious medical need brought by pretrial detainees recently changed. See Gordon v. Cty. of Orange, 888 F.3d 1118 (9th Cir. 2018).

A pretrial detainee's claim falls under the Due Process Clause of the Fourteenth Amendment to the federal constitution. Id. at 1125. Courts must analyze the claim under an objective deliberate indifference standard. Id. To bring the claim, the pretrial detainee must allege four elements:

> (i) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (ii) those conditions put the plaintiff at substantial risk of suffering serious harm; (iii) the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (iv) by not taking such measures, the defendant caused the plaintiff's injuries.

Id. The third element requires the court to consider if the defendant's conduct is "objectively unreasonable." Id. The inquiry is case specific, turning on the particularities of the facts and circumstances in a case. Id. A plaintiff must "prove more than negligence but less than subjective intent—something akin to reckless disregard." Id. Reckless disregard is the "[c]onscious indifference to the consequences of an act." DISREGARD, Black's Law Dictionary (10th ed. 2014).

The Court finds that Plaintiff adequately alleges a claim for deliberate indifference to a serious medical need as a pretrial detainee. Plaintiff first alleges that Defendants made an intentional decision to place him in the general population at the time of his initial booking, knowing that unsanitary conditions and MRSA are prevalent in general population areas. He next alleges that the conditions of general population caused his skin to deteriorate and to develop multiple lesions—consequences that he identified as likely to occur because of his skin disorder to the booking officers. But despite knowing of Plaintiff's fragile skin disorder and observing its worsening condition over the next ten days, Defendants continued to house Plaintiff in the general population rather than transferring him to a sick cell or to the infirmary. Further, over the first ten days of his confinement and although he was examined by different medical professionals, Defendants allegedly failed to provide any medication or treatment for Plaintiff's skin disorder beyond simple examinations even though the lesions continued to increase in number and severity. Defendants also failed to provide antibacterial soap or powder to Plaintiff over the entire span of Plaintiff's confinement, including the first ten days, despite his multiple requests. While

subsequent actions may constitute medical malpractice rather than a constitutional deprivation, the allegations of Defendants' actions and inactions during the initial ten days of Plaintiff's confinement amount to reckless disregard; Defendants consciously housed Plaintiff in general population despite knowing about Plaintiff's skin disorder and the likely consequences of Plaintiff being exposed to unsanitary conditions even though alternative housing options were available and failed to provide any treatment beyond simple examinations.

The Court acknowledges that mere negligence does not suffice to show a constitutional deprivation. Gordon, 888 F.3d at 1125 (requiring more than mere negligence to establish a constitutional deprivation); see also Hamby v. Hammond, 821 F.3d 1085, 1092 (9th Cir. 2016) (explaining professional negligence is insufficient to establish a claim for deliberate indifference to serious medical needs); see also Estelle v. Gamble, 429 U.S. 97, 106–07 (1976) (addressing claims for professional negligence in comparison to claims for deliberate indifference to serious medical needs brought by convicted persons). But Plaintiff alleges more than negligence. He alleges that Defendants acted with knowledge of his skin disorder and of the consequences of exposure to unsanitary conditions. He also alleges the failure to provide any meaningful treatment for the first ten days of his confinement. He therefore alleges that Defendants acted with reckless disregard to the consequences of housing him in general population, exposing him to unsanitary conditions and failing to provide any treatment whatsoever for the first ten days of his eighteen-day confinement.

Thus, the Court finds Plaintiff's allegations satisfy the standard for pretrial detainee claims of deliberate indifference to a serious medical need under Gordon v. County of Orange. The Court therefore finds NRS 41A.071 does not apply to Plaintiff's first claim.[1] Because the Court finds Plaintiff adequately alleges a claim for deliberate indifference to a serious medical need, the Court also declines to employ the analysis used by the Nevada Supreme Court as set forth in Deboer v. Senior Bridges of Sparks Family Hospital, Inc., 282 P.3d 727 (Nev. 2012) to distinguish claims

---

[1] The Court notes that Defendants argued only that NRS 41A.071 applies to Plaintiff's first claim. The Court will not *sua sponte* engage in discussions regarding Plaintiff's remaining claims sounding in negligence. But see Banner v. Las Vegas Metro. Police Dep't, No. 2-16-cv-01717-RFB-CWH, 2017 WL 4819102, at *3 (D. Nev. Oct. 24, 2017) (holding NRS 41A.071 was a procedural rather than substantive rule and did not bar amendment under FRCP 15).

for negligence from claims for professional negligence or malpractice. Based on the forgoing, the Court denies Defendants' first argument for dismissal.

### b. <u>Monell</u> Liability

The Court now turns to Defendants' argument regarding <u>Monell</u> liability. Local governments can be held liable under 42 U.S.C. § 1983 for deprivations of federal rights only if the violation is caused by action taken pursuant to official municipal policy or custom; municipalities may not be held liable under a theory of *respondeat superior.* <u>Monell v. New York City Dept. of Social Servs.</u>, 436 U.S. 658, 690 (1978). There are four ways to establish municipal liability: (1) official decision by policymaking body (<u>Monell</u>); (2) action by one with final policymaking authority (<u>Pembaur v. City of Cincinnati</u>, 475 U.S. 469, 480 (1986)); (3) failure to train (<u>City of Canton v. Harris</u>, 489 U.S. 378, 388 (1989); and (4) custom (<u>Gillete v. Delmore</u>, 979 F.2d 1342, 1348 (9th Cir. 1992) ). "When an individual sues a local government for violation of a constitutional right, the municipality is liable if the individual can establish that the local government 'had a deliberate policy, custom, or practice that was the moving force behind the constitutional violation he suffered.'" <u>Galen v. County of L.A.</u>, 477 F.3d 652, 667 (9th Cir.2007) (quoting <u>Monell</u>, 436 U.S. at 694–95). To allege municipal liability under <u>Monell</u>, a plaintiff must provide more than a bare allegation that a policy exists. <u>AE ex rel. Hernandez v. Cty. of Tulare</u>, 666 F.3d 631, 637 (9th Cir. 2012).

<u>Monell</u> liability applies to suits against private entities acting under the color of state law. <u>Tsao v. Desert Palace, Inc.</u>, 698 F.3d 1128, 1139 (9th Cir. 2012). A private entity can be considered to be acting under the color of state law through four tests: (1) the public function test; (2) the joint action test; (3) the state compulsion test; and (4) the governmental nexus test." <u>Id.</u> at 1140. The private entity's actions must be "fairly attributable to government." <u>Id.</u> at 1139 (citing <u>Lugar v. Edmondson Oil Co.</u>, 457 U.S. 922, 937 (1982)). A private entity contracting with a public prison system to provide medical treatment for inmates performs a public function and thus acts under the color of state law for purposes of § 1983. See <u>West v. Atkins</u>, 487 U.S. 42, 54–57 (1988) (holding that a physician who contracted with a prison to provide medical care to inmates was

/ / /

acting under the color of state law by providing services—medical care—that an inmate must traditionally obtain solely from prison authorities).

The Court finds that Plaintiff alleges a cognizable claim against Defendant Naphcare to impose <u>Monell</u> liability. First, the actions of Defendant Naphcare, a private entity, can be considered as action under the color of state law and attributable to Clark County Detention Center under the public function test. Defendant Naphcare provided medical services to Plaintiff, meaning Defendant Naphcare undertook the duty to provide care for a pretrial detainee. This duty constitutes a public function. <u>See id.</u> at n.15 (recognizing that "although the provision of medical services is a function traditionally performed by private individuals, the context" removed the inmate and physician's relationship from the real of "ordinary physician-patient relationship[s]."). Further, Plaintiff alleges that he was repeatedly denied adequate medical care over his eighteen-day period of confinement by multiple employees of Defendant Naphcare. The alleged repeated failures of multiple employees to provide adequate medical care to Plaintiff over the brief period of detention in conjunction with Plaintiff's multiple requests for care amounts to allegations indicating a "persistent or widespread" custom or practice of deliberate indifference to a pretrial detainee's serious medical concerns. The Court therefore denies Defendants' motion to dismiss Defendant Naphcare.

### c. Statute of Limitations

Finally, the Court considers the applicable statute of limitations. Defendants argue the claim must be dismissed under the one-year statute of limitations imposed by NRS 41A.097(2). Defendants' argument relies on the Court construing Plaintiff's claim for deliberate indifference to a serious medical need as one for medical malpractice. For the reasons set forth above, the Court will not do so. Thus, the one-year statute of limitations found in NRS 41A.097(2) does not apply. The two-year statute of limitations for tort claims in Nevada applies instead. <u>See</u> <u>Johnson v. State of Cal.</u>, 207 F.3d 650, 653 (9th Cir. 2000) ("Because § 1983 does not contain a statute of limitations, federal courts apply the forum state's statute of limitations for personal injury claims."); <u>see also</u> NRS 11.190(4)(e) (imposing a two-year statute of limitations for tort claims in

///

Nevada). Plaintiff filed his complaint within two years of his CCDC detention. The Court therefore denies Defendants' motion accordingly.

### VI. CONCLUSION

**IT IS THEREFORE ORDERED** that Defendants' Motion to Dismiss (ECF No. 20) is DENIED.

**IT IS FURTHER ORDERED** that this matter is referred to the Honorable Carl W. Hoffman for purposes of a scheduling order.

DATED: February 19, 2019.

_____
**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**