1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

* * *

STEVEN ROWE

                    Plaintiff,

    v.

NAPHCARE, INC. et al.,

                 Defendants.

Case No. 2:18-cv-00568-RFB-DJA

**ORDER**

I.        **INTRODUCTION**

      Before the Court is Defendant's Motion for Summary Judgment. ECF No. 47. For the following reasons, the Court grants Defendants' motion in part and denies it in part.

II.       **PROCEDURAL BACKGROUND**

      Plaintiff commenced this action by filing a complaint on March 29, 2017. ECF No. 1. On March 5, 2019, Defendants filed an answer. ECF No. 26. On July 3, 2018, Defendants filed a motion to dismiss which this Court denied. ECF Nos. 20, 24. On March 3, 2020, Defendants filed a motion for summary judgment. Plaintiff responded on March 24, 2020 and Defendants replied

on April 7, 2020. ECF Nos. 49, 51. This Court held a hearing regarding Defendants' motion for summary judgment on March 3, 2021. ECF No. 54. This written order now follows.

III.     **FACTUAL FINDINGS**

The Court makes the following findings of undisputed and disputed facts:

a.  **Undisputed Facts**

The Court finds the following facts to be undisputed. On April 15, 2016, Plaintiff Rowe was booked into Clark County Detention Center ("CCDC"). At his initial screening assessment, Plaintiff informed Defendant Trinidad Drozeski, EMT that he had a genetic skin condition, Hailey-Hailey disease, a genetic disorder rendering Plaintiff susceptible to a risk of infection if exposed and Plaintiff warned Defendant that he had one small lesion under his armpit. Defendant Drozeski failed to include this information in Plaintiff's Rowe assessment and instead wrote in the screening notes that Plaintiff had "no injuries or infections." Despite knowing of Plaintiff's risk to unsanitary conditions, he ordered Plaintiff to put on a CCDC shirt. After putting on the shirt, Plaintiff's armpit lesion started to grow substantially. Plaintiff Rowe was then placed in the 4L CCDC medical unit for detoxification. Later that day, Defendant Kristin Pagaduan, RN examined Plaintiff. Rowe informed her of his skin condition that is highly subject to exacerbation because of unsanitary conditions. In the medical notes, Defendant Pagaduan identified that Plaintiff had a rash in his armpit and Hailey-Hailey disease. Later that evening, Defendant Andrea Balogh, PA, created Plaintiff's medical treatment plan and prescribed medication: topical corticosteroid and antifungal treatments for Hailey-Hailey disease; Tylenol and x-ray for his arm. Defendant also designated Plaintiff for "standard booking and housing procedures."

2

Over the course of the day on April 16, 2016, Plaintiff's skin condition continued to worsen. On April 17, 2016, Defendant Hong Ye Huang, NP examined Plaintiff and noted "no lesions or rashes," and ordered that Plaintiff be transferred to general population. While in general population, Plaintiff's skin condition was exacerbated, and he developed more skin lesions.

On April 18, 2016, Defendant Dr. Harry Duran, MD examined Plaintiff and determined that he had an exacerbation of Hailey-Hailey syndrome with multiple areas of plaque and skin breakdown and discharge. Defendant Duran changed topical medications to treat this condition.

On April 19, 2016, Plaintiff submitted a medical kite regarding his skin condition and the risk of further infection. Also on this day, Defendant Mylissa Peck, LPN took Plaintiff's blood pressure and noted it in Plaintiff's medical fille.

Over the next 48 hours while in general population, Plaintiff's skin condition continued to worsen. On April 21, 2016, Defendant Valeri Gibson, LPN, took Plaintiff's blood pressure and updated his medical file. On April 23, 2016, Defendant Eileen Murillo, RN noted in Plaintiff's chart that his rashes were exacerbated, and she administered medication. On April 24, 2016, Defendant Daniel Navarro, NP also examined Plaintiff and noted that Rowe had chronic intermittent skin rash. Later that day, Defendant Ray Montenegro, NP examined Plaintiff and noted that he had lesions on his chest and body. On April 25, 2016, Plaintiff submitted another medical kite requesting an emergency visit from a doctor. Later that day, Defendant Duran requested that Plaintiff be transferred to 4L for medical observation. Defendant Duran also examined Rowe, noting improvement of some lesions, but groin lesions were irritated. Defendant Duran also indicated that Plaintiff needed to be transferred to 4L for continued care.

On April 26, 2016, Defendant Olga, LPN, noted that Plaintiff's medication had been ordered. Later that day, Defendant Duran examined Plaintiff and noted that antifungal medicine

3

1   be administered for the lesions on Plaintiff's body. On April 27, 2016, Defendant Kelly Woodring,

2   LPN administered the antifungal medicine. Over the following days Defendant Duran examined

3   Plaintiff, noting his lesions were improving.

4

5       Plaintiff was released from CCDC on May 3, 2016, and he was able to receive additional

6   treatment.

7           **b.  Disputed Facts**

8       The parties dispute the degree to which Rowe's condition may  have worsened and then

9

10  improved.

11

12  **IV.       LEGAL STANDARD**

13      Summary judgment is appropriate when the pleadings, depositions, answers to

14  interrogatories, and admissions on file, together with the affidavits, if any, show "that there is no

15  genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

16  Fed. R. Civ. P. 56(a); accord Celotex Corp. v. Catrett, 477 U.S. 317, 322(1986).

17

18      When considering the propriety of summary judgment, the court views all facts and draws

19  all inferences in the light most favorable to the nonmoving party. Gonzalez v. City of Anaheim,

20  747 F.3d 789, 793 (9th Cir. 2014). If the movant has carried its burden, the nonmoving party "must

21  do more than simply show that there is some metaphysical doubt as to the material facts …. Where

22  the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party,

23  there is no genuine issue for trial." Scott v. Harris, 550 U.S. 372, 380 (2007) (alteration in original)

24  (internal quotation marks omitted). It is improper for the Court to resolve genuine factual disputes

25  or make credibility determinations at the summary judgment stage.  Zetwick v. Cty. of Yolo, 850

26  F.3d 436, 441 (9th Cir. 2017) (citations omitted).

27

28

4

## V.      DISCUSSION

### a.  NaphCare's Liability under §1983

Defendant NaphCare argues that it cannot be held liable under Section 1983 under a theory of municipal liability because it has not been established that it has a policy, practice, or custom violating Plaintiff's constitutional rights. This Court disagrees. To state a claim under §1983, a plaintiff must allege two essential elements: (1) the defendant was acting under color of state law; and (2) the defendant deprived the plaintiff of rights secured by the Constitution or federal statutes. West v. Atkins, 487 U.S. 42, 48 (1988). The sole manner in which a government entity can be held liable under §1983 is under a theory of municipal liability, namely, by alleging the government entity had in place a policy, practice, or custom that was the moving force behind the Constitutional violation. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978)

Here, NaphCare does not dispute that its staff were acting under color of state law, but it vigorously disputes that it deprived Plaintiff of constitutional rights. Defendants argue that NaphCare did not have a policy or practice violating Plaintiff's Eighth Amendment rights. This Court disagrees. Based on undisputed and disputed facts findings, Plaintiff made Defendants aware on numerous occasions of his volatile medical condition and despite his warnings as well as requests for treatment, Defendants improperly placed Rowe in an environment that exacerbated his medical condition. The Court finds that Rowe has sufficiently alleged and established a pattern and practice of disregarding his stated and documented medical needs. Moreover, Plaintiff's medical experts, Dr. Rowan and Resneck opined that upon being aware of Rowe's rare medical condition, NaphCare medical staff had numerous opportunities to mitigate the exacerbation but instead there was minimal escalation to address Rowe's serious medical need. The Court finds that

there is a genuine issue of disputed fact as to whether or not NaphCare in fact had a custom or practice of ignoring Plaintiff's serious medical needs and therefore NaphCare can be subject to liability under §1983 for its practice violating Plaintiff's Eighth Amendment.

### b.  Eight Amendment Claims

The Eighth Amendment's prohibition against cruel and unusual punishment requires states to provide medical care to prisoners because they cannot secure medical care for themselves. See Estelle v. Gamble, 429 U.S. 97, 103 (1976). A prisoner asserting an Eighth Amendment claim for denial of medical care must show "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle, 429 U.S. at 106. There is both an objective and a subjective component to an Eighth Amendment violation. LeMaire v. Maass, 12 F.3d 1444, 1451 (9th Cir. 1993).The Ninth Circuit has established a two-part test for deliberate indifference to a serious medical need: First, the plaintiff must establish a serious medical need, meaning that failure to treat the condition could result in "significant injury or the unnecessary and wanton infliction of pain." Peralta v. Dillard, 744 F.3d 1076, 1081 (9th Cir. 2014) (citing Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006)). Second, the plaintiff must demonstrate the defendant's deliberate indifference to the need, meaning that the prison official "knows of and disregards an excessive risk to inmate health." Id. The defendant's indifference must be intentional. Jett, 439 F.3d at 1096. Further, the plaintiff must show that harm resulted from the defendant's indifference. Id.

### i.  Defendants Peck, Gibson, Kubla, Woodring, Murillo, Navarro, and Montenegro

The Court finds that Plaintiff has not presented evidence to establish genuine issues of disputed material fact as to whether Defendants Peck, Gibson, Woodring, Murillo, Navarro, and Montenegro were deliberately indifferent to Plaintiff's serious medical needs. These Defendants

6

interacted with Plaintiff once when they conducted routine checkups and administered anti-fungal medications. These Defendants also updated Plaintiff's chart with what was observed during the checkup. Plaintiff assertions that because Defendants did not do more, they were deliberately indifferent to his medical needs is incorrect and in fact the undisputed facts reflect otherwise. These Defendants monitored Plaintiff's medical condition and administered medications, which does not demonstrate deliberate indifference. Therefore, this Court grants summary judgment to Defendants Peck, Gibson, Kubla, Woodring, Murillo, Navarro, and Montenegro.

### ii.   Defendant Drozeski

Defendants argue that Plaintiff fails to show that Defendant Drozeski was deliberately indifferent about his Hailey-Hailey disease. This Court disagrees. Based on Plaintiff's testimony, he stated numerous times to NaphCare medical staff, including Defendant Drozeski that he was at substantial risk for infections due to his medical condition. Additionally, Defendant Drozeski was responsible for Rowe's initial screening which included general medical history and mental health assessments. Despite, Plaintiff informing Defendant Drozeski that he had a small lesion under his armpit, and his substantial risk if exposed to unsanitary conditions due to Hailey-Hailey disease, Defendant Drozeski failed to include those notes in Plaintiff's medical chart. Immediately upon wearing CCDC shirt and entering the unsanitary conditions of 4L CCDC medical unit, Plaintiff's lesion started to grow. Therefore, based on the record, the Court finds that Plaintiff has demonstrated genuine issues of disputed fact as to whether that Defendant Drozeski was deliberately indifferent to Plaintiff's serious medical needs. The Court denies summary judgment to Defendant Drozeski.

### iii.   Defendant Pagaduan

The Court finds that Plaintiffs fails to show a genuine issue of disputed material fact as to

whether Defendant Pagaduan was deliberately indifferent to Plaintiff's serious medical need. Unlike Defendant Drozeski, when Plaintiff informed Pagaduan of his medical condition, she noted it in his medical chart as well as the small lesion under his armpit. Plaintiff argues that because Defendant Pagaduan did not do more than update his chart, she was deliberately indifferent to his medical needs. This Court disagrees. The record reflects that Defendants Pagaduan took appropriate steps updating Plaintiff's history regarding his Hailey-Hailey disease. Therefore, the Court grants summary judgment to Defendant Pagaduan.

### iv.   Defendant Balogh

The Court finds that Plaintiff failed to show a genuine issue of disputed material fact as to whether Defendant Balogh was deliberately indifferent to his serious medical need. Balogh documented Plaintiff's Hailey-Hailey disease and prescribed topical corticosteroid and antifungal treatments. Although Balogh designated Plaintiff to standard booking and housing procedures, based on the record Balogh was treating Plaintiff for his serious medical need. While the record is not clear that Balogh suggested treatment was regularly implemented, the Court does not find there to be any disputed facts establishing Balogh's deliberate indifference. Therefore, the Court grants summary judgment to Defendant Balogh.

### v.   Defendant Huang

Defendants argue that Plaintiff fails to show that Defendant Huang was deliberately indifferent to Plaintiff medical needs. This Court disagrees. Based on the record, by the time Defendant Huang examined Plaintiff on April 17, 2016, other NaphCare medical staff already noted and found that Rowe had Hailey-Hailey disease and lesions. Rowe also reiterated to Huang that he had Hailey-Hailey disease and a lesion. Despite all this medical information and statements, Huang noted in Rowe's medical chart that he had no lesions or rashes, and Huang transferred

Plaintiff to general population where his lesions and rash worsened and spread throughout his body. Defendant Huang's actions demonstrate that he deliberately ignored Rowe's serious medical condition and made decisions, such as the transfer of Plaintiff to general population, that exacerbated Rowe's medical condition. Based on the record a jury could conclude that Huang was deliberately indifferent to Rowe's medical condition by ignoring medical information and statements and by directing that Rowe be placed in general population. Therefore, the Court finds that Plaintiff has shown a genuine issue of disputed material fact as to whether Defendant Huang was deliberately indifferent to his medical needs and denies summary judgment to Defendant Huang.

### vi.  Defendant Duran

The Court finds that Plaintiff fails to demonstrate genuine issue of disputed material fact as to whether Defendant Duran was deliberately indifferent to Plaintiff's medical needs. The record reflects that Defendant Duran examined Plaintiff numerous times, adjusted his treatment, transferred him out of general population, and monitored Plaintiff's improvements. Rowe wanted Defendant Duran and other NaphCare staff to expedite treatment and although there was a slight delay before Defendant Duran was able to adjust treatment and remove Plaintiff from general population, the Court finds that this does not create a genuine issue of disputed fact that Defendant Duran was deliberately indifferent. Therefore, the Court grants summary judgment to Defendant Duran.

### c.  State-law Claims

The Court finds that Plaintiff's state-law claims sound in professional negligence; therefore, such claims must be supported by an affidavit of a medical expert pursuant to NRS 41A.071. See Banner v. Las Vegas Metropolitan Police Department, No. 16–cv–01717–RFB–

9

CWH, 2017 WL 4819102, at*2 (Nev. Oct 24, 2017) (noting that when the state claim contains providers of healthcare as defined by NRS 41A.017, the cause of action is one of professional negligence and requires a medical expert affidavit). Here, Plaintiff's medical expert Dr. Rowan and Resneck only opine that Defendants' actions constitute deliberate indifference. Both expert affidavits fail address whether Defendants' actions were negligent. Therefore, the Court dismisses all of Plaintiff's state law claims.

## VI.        CONCLUSION

**IT IS THEREFORE ORDERED** that Defendants' Motion for Summary Judgment (ECF No. 47) is GRANTED in part. The Court grants summary judgment to Defendants Peck, Gibson, Kubla, Woodring, Murillo, Navarro, Montenegro, Pagaduan, Duran, and Balogh.

**IT IS FURHTER ORDERED** that all of Plaintiff's state law negligence claims are DISMISSED. The parties shall file a joint pretrial order by August 21, 2021, with proposed trial dates beginning January 2022.

DATED July 26, 2021.


_____

**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**